That brings us to the final case of the morning, Appeal No. 6, U.S.A. v. Ayala-Garcia. That's Appeal No. 25-1880. And we should be joined by remote counsel, Debbie Appellant. Good morning. Mr. Baisley, can you hear us? Yes, ma'am. I can hear you and see you. Can you hear me? Yes. You may proceed when you're ready. All right. Well, thank you. You may please report. My name is Chris Baisley. I represent Mr. Garcia in this case. I do want to say, first of all, thank you very much for allowing me to appear remotely. I do appreciate that very much. My argument is going to be very short and very simple, and it's going to start off with concessions to the government. The government is exactly correct. In an ordinary circumstances, when a defendant shows some reluctance to enter a guilty plea, that does not invalidate the plea. However, there's a factor in this case I think sets it slightly outside the ordinary, and that's the consistency with which Mr. Garcia advised the court during the plea colloquy that he was doing this with the utmost reluctance. In order to determine whether or not a plea is valid, this court needs to look at the totality of the circumstances. When the court goes through the record, the totality of circumstances show that no less than four times he advised the court that he felt like he had no other choice. He was just going along with it. He said five times that he wanted more time to think about what he was doing, and about eight times he said the process was being unfair. And I think when the court takes a look at the totality of the circumstances for his plea, it can't come to a conclusion that it was less than knowingly and voluntarily given. And I do appreciate the court taking this case seriously and taking a good look at it. Mr. Baisley, could I just ask you, has the defendant made clear that he wants to go to trial if he were to be allowed to withdraw this plea? He has not made it clear he wanted to go to trial. That would be a no. Okay, thank you. Well, do you agree that the plain error review standard applies here? I disagree with that. I think, again, if you take a look at the things that Mr. Garcia said, I think although the trial counsel obviously didn't say we object, I think this court could turn out to be some sort of a constructive objection. So I would still argue that this court can review it under the normal standard. Thank you. And then unless there's any other questions, I would like to reserve or defer the rest of my time for rebuttal. We will do that. Thank you, Mr. Baisley. All right. Mr. Clark. Colin Clark on behalf of the United States. May it please the court. The criminal process is replete with situations that require defendants to make difficult judgments as to which course to follow, and even when dealing with the right of constitutional dimensions, he may follow whatever course he chooses, but the Constitution does not, by that token, always forbid requiring him to choose. Mr. Elia Garcia must have understood his alternative courses of action. He did that. As for the plain error issue, as we pointed out in our brief, what takes this issue out into plain error is that he had to seek to withdraw his plea, and that, of course, makes sense not only because it actually is just the normal requirement that we not take constructive objections, but also it changes the standard because normally if a person, a defendant, seeks to withdraw his plea, it would normally be dealt with under the Rule 11 fair and just standard, but because Rule 11 has not been argued here, it's just a due process issue, and so those are somewhat different standards, although whether a plea is knowing is required under both standards. As to the other issue, the United States Supreme Court has not constitutionalized feelings of reluctance. Ford and Kircher v. Hayes is one such case that stands for that proposition, and while it is just human to understand that someone staring down someone in a black robe and decades in prison to feel some difficulty about making a decision, the decision has to be made, and it has to be made at a time where he's given enough time to understand the plea agreement, and this Court's cases in Weathington, Lundy, Wasney basically hold that the amount of time given has to at least be enough for the defendant to understand the consequences, and the record shows that he understood these consequences, and so his feeling of reluctance, while understandable on a human level, is simply not something for which he has the authority to not only withdraw a plea, but to do so as a matter of obvious error under the plain error standard. Given the argument today and the lack of a reply brief, I don't have much else to say, but I would be happy to answer any questions that the Court might have. Do you contend that there is no amount of time pressure that would constitute coercive for purposes of our voluntariness inquiry, or just that the amount of time here wasn't coercive? So the Wasney case described the amount of time given was almost overnight, if I'm remembering correctly, and in Weathington it was three days, and so this Court has not taken a time to – I'm sorry, this Court has not held that there is a minimum amount of time, but my recollection of the Lundy case is that the amount of time is irrelevant. In fact, I believe that's the word that the Lundy case uses, so long as the consequences are understood by the defendant as a matter of what's knowing and voluntary, and that just makes sense because if everybody understood what was going on, say an AUSA was charged with a crime and the plea agreement was formed in the hallway of a courthouse, it wouldn't make sense to have a specific amount of time by which the defendant has to have to reflect on the plea agreement. However, this Court has a duty, the District Court had a duty, to make sure that this particular defendant understood these particular consequences. So the answer is the first one, there's no amount of time. But I didn't want to say that – I didn't want to suggest that there could be five seconds and that would be enough. In this case, however, the hearings that were held before Magistrate Judge Garcia and Judge Sweeney came after months of negotiations and discussions, correct? Yes, and actually that reminds me. Yes, and I wanted to correct a slight misstatement in our brief. On page 36 of our brief, we said that the offer never changed. That's true as far as the record goes, and I'm saying it's not in the record, but in order to correct my mistake, from February 2023 to May 2023, the offer was 348 months as a cap as the 11C1C plea. And then from May 25th, 2023 through the date of the plea, November 14th, 2024, so about a year and a half, it was a 300-month cap. Now, the plea wasn't open for all of that time, but it was opened and closed and reopened and closed. Insofar as the record is concerned, the May 2024 hearing, Judge Sweeney goes over that plea, and all material aspects of the plea are the same as the one he ended up accepting something like six months later. It wasn't the same piece of paper, but I would say in every material respect, it was the same plea that had been opened from May of 2024 to November of 2024. I don't see where the district court addresses a different factual issue, where Mr. Ayala Garcia indicates that he's just now seeing the second superseding indictment, and then there's this exchange on the record where the government explains it's not materially different from the superseding indictment. Some things have changed not relevant to really Mr. Ayala Garcia. But I don't see a resolution of that. Am I missing it? I don't see the district court. Would that be irrelevant to our understanding of how much he understood about the counts he was pleading to, etc.? It's irrelevant because he waived arraignment under Rule 10, and Rule 10A of the Code of Criminal Procedure requires that the judge make sure he have a copy of it. So insofar as that issue is concerned, I think legally it's waived, but obviously whether he understood it is a separate question. And you'll see right after that exchange occurs, if you give me one moment, Mr. Brandt, the defense attorney at the time, said that he handed him a copy of the superseding indictment and mailed one to him. And you can find that on the court's prerogative. Give me a moment. And I believe that everyone – here it is. It's page 9 of the change of plea hearing, and that document number is 1039. The 1039, page 9. I previously mailed him and delivered him a copy when I visited him at the Henderson County Correctional Center. Is that the Henderson County, Kentucky facility? Yes, sir. I'm sorry. I believe so. That's where he was detained. I believe so. My memory is not perfect on that particular issue, but I believe so. Yep. As to how it was resolved, there was some further discussion of it. He eventually says that he also testifies that he understood the charges. And so by testifying that he understood the charges later in the hearing, the fact that he had the physical copy of it, which was in a language he didn't understand in the first place, doesn't matter so much. But the fact that his attorney visited with him to discuss the plea agreement in the case matters quite a bit. Thank you. Thank you. If you have no further questions, I thank the court for its time and hope you all have a nice day. Okay, thank you. Mr. Baisley. Yes, ma'am. Just to follow up of what counsel just said, the record does show that he actually, to follow up with what the court questioned, the record does show that he was he said he received that document, that being the second superseding indictment just at the beginning of the hearing. The issue was he whether or not he was translated for improper. I think anything like that was not resolved. However, in my duty of candor to the court, I do believe he was actually my recollection is that he was arraigned on that indictment, but I'll go with a waiver as well. So that kind of mitigates against any argument. But again, my duty of candor to the court, I feel I need to express that. Unless there's any other questions, I'll just go ahead and rest on my brief. Appreciate the court's time. All right. Well, we thank both parties, and we will take the case under advisement. That concludes our arguments today. Thank you.